IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| JOHN FABIAN WILLIS., | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 24-0387-JB-B |
| | ) | |
| CITY OF MOBILE, et al., | ) | |
| | ) | |
| **Defendants.** | ) | |

## ORDER

This action is before the Court on Defendants' (City of Mobile, Detective Daniel Winter, and Officer W. Grant) Partial Motion to Dismiss (Doc. 61), Plaintiff's response (Doc. 73), and Defendants' reply (Doc. 75) and Defendant Walmart's Motion to Dismiss (Doc. 64) Plaintiff's response (Doc. 74) and Walmart's reply (Doc. 77). A motion hearing was held on May 4, 2026, with counsel for all parties present. After careful consideration of the relevant filings and arguments and for the reasons stated at the hearing and set out below, Defendants' motion (Doc. 61) is **GRANTED** and Walmart's Motion (Doc. 64) is **GRANTED in part and DENIED in part**.

### I.    Factual[1] and Procedural Background

On October 20, 2022, in the Walmart Store situated at 2570 Government Blvd, Mobile, Alabama, Plaintiff, John Fabina Willis ("Willis") made a cash payment on his Capital One Walmart Credit Card by issuing a Walmart clerk five (5) one hundred dollar bills. (Doc. 58).[2]  Each of the

---

[1] The entirety of the factual allegations are recited from Plaintiff's Complaint with only minor non-substantive changes.
[2] The operative Complaint in this action is the Amended Complaint filed on February 13, 2026. (Doc. 58).

one hundred dollar bills had a 1996 series number that was clearly visible.   According to Plaintiff, there is a specific way to authenticate a series 1996 one hundred dollar bill.  The five 1996 series one hundred dollar bills presented to the Walmart clerk could have been authenticated if the correct authenticating measures had been performed.  The Walmart clerk, from the appearance of the one hundred dollar bills, and without having considered the factors for authenticating the 1996 series one hundred dollar bills, walked to a different area of the store with the money and returned shortly afterwards with store security officer Roderick Miles ("Miles"), who without having considered the factors for authenticating the 1996 series one hundred dollar bills, and without having investigated the legality of the one hundred-dollar-bills, told Willis he was under arrest for issuing counterfeit bills, handcuffed him, and placed him in the back of a police car.

Willis consistently stated the money was not counterfeit and asked to speak to a store manager. Instead of speaking to a store manager, City of Mobile Police Officer Daniel Winter ("Winter") came on the scene, seized the money, left the scene, then returned shortly afterwards, and without having considered the factors for authenticating the 1996 series one hundred dollar bills, and without having investigated the legality of the one hundred dollar bills, told Plaintiff he was under arrest for issuing counterfeit money. The handcuffs placed on Plaintiff by officer Miles were replaced by the handcuffs of Mobile Police Officer W. Grant ("Grant"), who without having considered the factors for authenticating the 1996 series one hundred dollar bills, and without having investigated the legality of the one hundred dollar bills, transported Willis to the Mobile County Metro Jail.

Officer Winter filed felony charges against Willis alleging he had uttered counterfeit one hundred dollar bills.  Willis remained incarcerated in the Mobile County Metro Jail from the date

2

of his arrest on October 20, 2022, until he posted bail on October 24, 2022. After the 1996 series one hundred dollar bills were submitted for analysis by the State, and were determined to be lawful currency, the State moved to nolle prose the charges on November 15, 2022, and on November 16, 2022, the Court granted the State's motion, and the charges were nolle prossed.

Based on the above facts, Willis filed the instant action asserting the following claims:

**Count I**- violation of his 4th, 5th, and 14th Amendment Rights pursuant to 42 U.S.C. 1983 against the City
**Count II**- claim against Chief Paul Prine pursuant to 42 U.S.C. 1983[3]
**Count III**- violation of his 4th, 5th, and 14th Amendment Right pursuant to 42 U.S.C. 1983 against Officer Daniel Winter
**Count IV**- violation of his 4th, 5th, and 14th Amendment Right pursuant to 42 U.S.C. 1983 against Officer Grant
**Count V**- state law claim of false imprisonment against Officer Miles and Walmart
**Count VI**- state law claim of malicious prosecution against Officer Winter and Walmart

On February 27, 2026, Defendants City of Mobile (the "City"), Detective Daniel Winter and Officer W. Grant (collectively, "the officers") filed a Partial Motion to Dismiss seeking to dismiss all claims against the City and to dismiss the Fifth and Fourteenth Amendment claims against the officers.  (Doc. 61). Thereafter, Defendant Walmart Inc. ("Walmart") filed its motion to dismiss Plaintiff's claims against it.  (Doc. 64).  The motions are fully briefed, a hearing was held, and the issues are ripe for adjudication.[4]

---

[3] Count II against Paul Prine has been dismissed. (*See* Doc. 79)
[4] Of note, this is the second round of motions to dismiss filed by the City and the Officers because the Court allowed Plaintiff an opportunity to file an Amended Complaint, after the first round of motions were granted. (*See* Doc. 57).

## II.      Standard of Review

When reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must view the allegations in the light most favorable to the plaintiff and accept the allegations of the complaint as true. *Speaker v. U.S. Dep't of Health & Human Servs.*, 623 F.3d 1371, 1379 (11th Cir. 2010). To avoid dismissal, a complaint must contain sufficient factual allegations to "state a claim to relief that is plausible on its face" and "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (alteration in original) (citations and quotations omitted). The Court should not assess "whether a plaintiff will ultimately prevail but" consider "whether the claimant is entitled to offer evidence to support the claims." *Id*. at 583 (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id.* at 556. "The Supreme Court's *Twombly* formulation of the pleading standard "does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Williams v. Henry*, 2009 WL 3340465, at *2 (S.D. Ala. Oct. 15, 2009) (citations and internal quotations omitted). "A district court may properly dismiss a

complaint if it rests only on 'conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts.'" *Magwood v. Sec'y, Florida Dep't of Corr.*, 652 F. App'x 841, 843 (11th Cir. 2016), cert. denied sub nom. *Magwood v. Jones*, 137 S. Ct. 675 (2017) (quoting *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003)).

### III.    Analysis

Counts I, III, and IV are Section 1983 claims against the City, Officer Winter, and Officer Grant, respectively based on violations of Willis' Fourth, Fifth, and Fourteenth Amendment rights. (Doc. 58).  The City seeks dismissal of all claims against it and Winter and Grant seek dismissal of Plaintiff's Fifth and Fourteenth Amendments claims for failure to state a claim.  (Doc. 61).

### A.    The City of Mobile

The City contends Count I fails to state a claim because Plaintiff has not alleged a pattern of constitutional violations or otherwise alleged facts to establish municipal liability.  (Doc. 61). In response, Plaintiff concedes he has not alleged a pattern of constitutional violations but argues that the need to train officers on how to identify and authenticate old currency is so obvious, that he is not  required to allege a pattern of constitutional violations to put the City on notice of a need to train.

"To impose liability on a municipality under § 1983, the plaintiff must identify a municipal policy or custom causing the deprivation of federal rights." *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 691-94, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). To state a Monell claim, a plaintiff must show: "(1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004).

5

To establish a city's deliberate indifference, "a plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir.1998). A city may be put on notice in two ways. First, if the city is aware that a pattern of constitutional violations exists, and nevertheless fails to provide adequate training, it is considered to be deliberately indifferent. *Id*. at 1351. Alternatively, deliberate indifference may be proven without evidence of prior incidents, if the likelihood for a constitutional violation is so high that the need for training would be obvious. *Id*. at 1351-52. *See also Vineyard v. County of Murray, Georgia*, 990 F.2d 1207, 1212 (11th Cir. 1993).

In Count I of the Complaint Plaintiff asserts a claim against the City for failure to train in pertinent part, as follows:

> It is highly probable that unless a police officer receives proper training for determining the procedure to be followed in determining whether an older currency such as the 1996 series one hundred dollar bill is counterfeit, said officer's lack of training may cause him/her to arrest an individual for said dated currency which is actually lawful. The training should require officer to perform an investigation to determine the legitimacy of the said currency before deciding on what police action to take.

> In the instant case, as a direct and proximate result of the City of Mobile's failure to provide sufficient funding to the City of Mobile Police Department for training police officers as to the procedure for determining whether or not dated currency such as the 1996 series one hundred dollar bill is counterfeit or lawful, Plaintiff Willis was unlawfully arrested…

(Doc. 58).

The Court is sympathetic to Plaintiff's position but not persuaded a plausible claim has been stated.  As an initial matter, there is no allegation that the City has been put on notice of a need to train officers with respect to old currency based on repeated instances of constitutional

6

violations. Plaintiff conceded his Complaint contains no such allegation. The only remaining avenue, then, for Plaintiff to allege a plausible claim against the City without evidence of prior incidents, is to allege that the likelihood for a constitutional violation is so high that the need for training would be obvious. Plaintiff argues just that, but his arguments are insufficient for two reasons. First, nowhere in the Complaint does Plaintiff allege an "obvious need," and at this stage the Court can only consider the Complaint. To be sure, Plaintiff has alleged that the City "is required to provide for funding" for the Police Department, for training "where the likelihood for constitutional violations are so high the need for training would be obvious." (Doc. 58). Plaintiff, however, fails to allege that the constitutional violation which allegedly occurred here is one of those instances. Instead, the Complaint goes on to state that 1996 currency is still circulated and that police officers should be trained to authenticate older currency. (*Id*.). Finally, Plaintiff asserts that "it is highly probable" that without specific training as to older currency, officers "may" improperly arrest an individual. (*Id*.). There are no specific facts relating to the number of 1996 bills in currency, how often they are circulated, or how often the use of such currency results in arrests (properly or otherwise). As a result, the facts alleged simply fail to state an "obvious" need to train from which vicarious liability could be plausibly supported. Second, even if the language used by Plaintiff stated an obvious need, the Court is not compelled that the facts alleged, when taken as true, would support a plausible claim. As pointed out by the City, the Supreme Court has put forth only one hypothetical instance where the need for more or different training might be "so obvious": "training in the use of deadly force where firearms are provided to police officers." *West v. Lakatos*, 2025 WL 3442824, at *4 (11th Cir. Dec. 1, 2025) (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989)). In so doing, the Supreme Court noted that

"city policy makers know to a moral certainty" that officers would arrest fleeing felons and those officers were "armed with firearms, in part to accomplish this task." *Canton*, 489 U.S. at 390 n. 10. The facts stated here that is it "highly probable" that improper arrests "may" occur (*see* Doc. 58), falls significantly short of alleging an "obvious" need for training as set forth in *City of Canton*. As a result, Count I of the Complaint does not state a plausible claim because it fails to allege the City acted with requisite deliberate indifference, a required element of Plaintiff's claim.

### B. Officer Grant and Officer Winter (Counts III and IV)

Grant and Winter (collectively "the Officers") argue Plaintiff has failed to state a cognizable claim against them pursuant to the Fifth or Fourteenth Amendments, warranting dismissal of Counts III and IV pursuant to those Amendments. In response, Plaintiff conceded that there is no viable claim against the Officers under the Fifth Amendment, because the officers are not federal officers. (Doc. 73). As a result, this Court need only consider whether the Complaint states a plausible claim against the Officers under the Fourteenth Amendment. (Doc. 61).

With respect to the Fourteenth Amendment, Plaintiff claims to have been "denied due process in being arrested without probable cause" and "denied equal protection of the law in being arrested for possessing legal currency whereas others possessing legal currency are not arrested." (Doc. 58). The Court will address each claim separately.

### 1.    Due Process

According to the Officers, Plaintiff's due process claims fail because while he alleges he was imprisoned for four days, he did not allege he was not released after posting bond.  (Doc. 61).  In response, Plaintiff posits the following argument:

> In the instant case, the officers detained and arrested Plaintiff Willis without probable cause. The officers knew or should have known that they should have investigated the legitimacy of Plaintiff Willis' currency after he was first detained. Instead of releasing Plaintiff Willis due to not having performed an investigation as to the legitimacy of the currency, and after detaining Plaintiff Willis for an unreasonable period of time, the officers arrested him resulting in him being incarcerated for four (4) days.
>
> The officers unreasonable detaining of Plaintiff Willis and their unlawful arrest of him, violated his fourteenth amendment due process rights.

(Doc. 73).

A Due Process claim brought because of a false imprisonment, "requires showing common law false imprisonment combined with the defendant's deliberate indifference to the plaintiff's right to be free from continued detention after it was or should have been known that the detainee was entitled to release." *Galloway v. City of Abbeville, Ala.*, 871 F.Supp. 2d 1298, 1308 (M.D. Ala. 2012) (internal quotation omitted). "Typically this involves a scenario where the defendant holds the plaintiff for a substantial period of time after it was or should have been known that the detainee was entitled to release." *Galloway*, 871 F, Supp. 2d at 1308 (emphasis omitted).

Here, Plaintiff alleges the Officers lacked probable cause to arrest him and therefore, falsely imprisoned him.  However, the only facts in the Complaint that ostensibly go towards showing deliberate indifference, state that as soon as Plaintiff posted bond, he was released. As a result, there are no facts to indicate that Plaintiff *continued* to be detained once he was entitled

to be released (by posting bond). Additionally, there are no facts to suggest the Officers knew or should have known Plaintiff was entitled to be released prior to posting bond.   Accordingly, Plaintiff has not alleged any facts to show the Officers were deliberately indifferent and his due process claims fail.

### 2.    Equal Protection

The Officers seek dismissal of Plaintiff's equal protection claims because Plaintiff "does not allege he was discriminated against as a member of a protected class, nor does he allege the essential elements of a 'class of one' equal protection claim." (Doc. 61). In response, Plaintiff argues he has sufficiently stated a claim based on a "class of one" because he was arrested for possessing legal currency whereas others were not.  (Docs. 58 and 73).

"The Constitution prohibits selective enforcement of the law based on considerations such as race," but "[e]qual protection claims are not limited to individuals discriminated against based on their membership in a vulnerable class." *Gaston v. City of Leesburg*, 2025 WL 252437, at *3 (11th Cir. Jan. 21, 2025) (internal citations omitted). The Supreme Court has recognized that equal protection claims may be brought by a "class of one" when the plaintiff alleges that (1) he was intentionally treated differently from others similarly situated; and (2) there was no rational basis for the differential treatment. To be similarly situated, the comparators must be prima facie identical in all relevant respects. *Id*. at *3 (internal citations and emphasis omitted).  A "class of one" plaintiff could fail to state a claim by leaving out critical facts in alleging that he is similarly situated to another. *Id*.  (internal citations omitted).

Here, Plaintiff alleges his comparators are other individuals using legal currency, but such a general comparison avoids contemplation of the facts as alleged by Plaintiff – arrest for use of

*old* currency.  The distinction of the age of the currency is exactly what makes Plaintiff's claim dissimilar from others and negates that he is similarly situated to other individuals who were treated differently. To be clear, there is no allegation that other individuals who used old currency were not arrested and therefore, Plaintiff's complaint alleges no facts to show that he was intentionally treated differently from others similarly situated as he is required to do. Accordingly, his equal protection claims fail.

### C.    Walmart

Plaintiff's complaint asserts two causes of action against Walmart: (1) Count V for false imprisonment by Officer Miles and Walmart and (2) Count VI for malicious prosecution by Winter and Walmart. (Doc. 58).  Walmart seeks dismissal of both claims.  (Doc. 64).  With respect to Count V, Plaintiff seeks to hold Walmart vicariously liable based on the actions of Officer Miles, an off-duty police officer acting as a security guard.  With respect to Count VI, Plaintiff seeks to hold Walmart liable for the actions of Officer Winter, a police officer for the city of Mobile.

### 1.    False Imprisonment

According to Walmart, dismissal is warranted on Count V because at the time of the events relevant to the claim, Officer Miles was acting in his capacity as a police officer and not as a security guard employed by Walmart because he "witnessed what he believed was criminal activity by Willis."  (Doc. 64). More specifically, "[Officer Miles'] status changed when he saw what he be believed to be counterfeit currency being tendered by Willis." (Doc. 64). In contrast, Plaintiff contends that at the relevant time, Officer Miles was acting in his capacity as a security officer.  (Doc. 74).

11

The parties acknowledge the applicable Alabama law relating to liability for conduct of off duty police officers working as security guard for private entities as follows:

> The general rule of respondeat superior, or master-servant liability, is that the master is vicariously liable for torts, including assault and battery, committed by the servant in the line and scope of the latter's employment. *Plaisance v. Yelder*, 408 So.2d 136 (Ala. Civ.App.1981). Alabama law narrowly defines the line and scope of such employment as it pertains to off-duty police officers moonlighting as private security guards. In *Whitely v. Food Giant, Inc.*, 721 So.2d 207 (Ala. Civ. App.1998), the court affirmed summary judgment in favor of an off-duty police officer's private employer sued for assault and battery under the theory of respondeat superior. According to that court, "when an off-duty police officer witnesses an offense for which the perpetrator is arrested, the officer's status changes, and he is then acting in his capacity as a police officer and not his capacity as a security guard." 721 So.2d at 209 (citing *Dinmark v. Farrier*, 510 So.2d 819 (Ala.1987)).

*Ortega v. Brock*, 501 F. Supp. 2d 1337, 1339 (M. D. Ala. 2007).

The Court is narrowly persuaded that Count V is not due to be dismissed.  According to the Complaint, when Willis passed the one hundred dollar bills to the Walmart clerk, Officer Miles was not present.  As a result, he could not have witnessed the alleged crime of "issuing counterfeit bills."  While Walmart makes a convincing argument that Officer Miles ultimately viewed the bills Willis tendered, that fact is not contained in the Complaint.  Accordingly, the facts as alleged in the Complaint state that without independently witnessing anything, Miles, a security guard for Walmart, arrested Willis.  While discovery may provide insight to the full extent of the facts surrounding Miles' involvement such that a more thorough analysis of his status may be performed, at this stage, dismissal is not warranted.

### 2.    Malicious Prosecution

Next, Walmart asserts that dismissal of Count VI is warranted because Plaintiff failed to allege that at the time of the relevant events, Officer Winter was somehow employed by or

affiliated with Walmart such that vicariously liability could attach.  (Doc. 64).  Plaintiff contends that Walmart can be vicariously liable for the actions of Officer Winter because Officer Miles' actions led Officer Winter to file charges against Willis. (Doc. 74).  There is no dispute that Officer Winter filed felony charges against Willis or that at all times, Officer Winter was a police officer with the City and not employed by Walmart.

As pointed out by Walmart, in vicarious-liability analysis, there are three types of relationships: master/servant; principal/agent; and independent contractor. *SouthTrust Bank v. Jones, Morrison, Womack & Dearing, P.C*, *939* So.2d 885, 903 (Ala. Civ. App.  2005) (citing to Restatement (Second) of Agency § 2 (1958)).  Separately, to survive a motion to dismiss for malicious prosecution, Plaintiff must allege "(1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused." *Wood v. Keesler*, 323 F.3d 872, 881-2 (11th Cir. 2003).

Here, Plaintiff has failed to allege any facts in the Complaint establishing a relationship between Walmart and Officer Winter. As a result, Plaintiff has failed to plead Walmart can be vicariously liable for the actions of Officer Winter.  Without such a connection, Plaintiff has failed to allege an element of his claim, *i.e*., that a judicial proceeding was initiated by Walmart. Accordingly, Count VI is subject to dismissal.

**IV.      Conclusion**

After careful consideration of the relevant filings and arguments and for the reasons stated at the hearing and dictated above, Defendants' motion (Doc. 61) is **GRANTED** and Walmart's Motion (Doc. 64) is **GRANTED in part and DENIED in part**.

**DONE and ORDERED** this 23rd day of June, 2026.

/s/ JEFFREY U. BEAVERSTOCK
CHIEF UNITED STATES DISTRICT JUDGE

14